**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | | |
|---|---|---|
| DERRICK ANTWOIN JOHNSON,     :     Plaintiff,                                              : | | CIVIL ACTION NO.<br>2:09-CV-00180-RWS-SSC |
| v.                                                            : | | |
| DON HINSLEY and DR. MARC<br>CHETTA, in their individual and<br>official capacities,<br>     Defendants. | :<br>:<br>:<br>: | PRISONER CIVIL RIGHTS<br>42 U.S.C. § 1983 |

### MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Now before the Court are the motions for summary judgment filed by Defendants Dr. Marc Chetta [Doc. 23] and Don Hinsley [Doc. 26]. Plaintiff Derrick Johnson has not responded to either motion.

### I. Procedural History

Plaintiff filed this *pro se* 42 U.S.C. § 1983 action against Defendants Hinsley, Chetta and others, alleging that Defendant Hinsley "wilfully" and negligently caused an injury to Plaintiff's foot during a jail work detail and Defendant Chetta thereafter "willfully" provided "grossly inadequate medical care which lead [sic] to the perman[e]nt disfigurement and disability of Plaintiff's right foot and toes." (Doc. 1, Statement of Claims at 2-3; Id. at CM/ECF 9-10). The complaint further alleges "deliberate indifferen[ce]" on the part of the defendants. (Doc. 1, Statement of Claims at 7; Id. at CM/ECF 14).

In an Order allowing Plaintiff's § 1983 claims to proceed against Defendants Hinsley and Chetta but dismissing Plaintiff's claims against all other defendants [Doc. 7], this Court described Plaintiff's allegations as follows:

> On September 12, 2008, Plaintiff was on a work detail at JCCI, laying a water pipe. While Plaintiff's back was turned, Hinsley pulled a backhoe next to Plaintiff, and let down the backhoe's "out rigg" on Plaintiff's right foot, crushing his foot. Supervisor Jeff Bridges was called to take Plaintiff to "medical," and Bridges notified Gulthry of the incident. After a nurse in "medical" gave Plaintiff pain medication, he immediately was transported to the Medical Center in Commerce, Georgia. At that facility, Dr. Kirk T. Brown x-rayed Plaintiff's foot, determined it was badly fractured and his big toe was broken, and recommended that JCCI take Plaintiff within two to three days to an orthopedic specialist to check the tissue and nerves for damage and to provide a cast or splint. Plaintiff returned to JCCI and saw Dr. Chetta six days later, on September 18, 2008. Dr. Chetta ignored both of Dr. Brown's recommendations. Although Nurse Ronnie Jones "clearly opposed . . . the delib[erate] delays," Dr. Chetta did not send Plaintiff to an orthopedic specialist until twenty-three days later. On October 2, 2008, Dr. Chetta saw Plaintiff again, cut open Plaintiff's foot to relieve swelling, realized "the seriousness of his error," and scheduled Plaintiff to see the orthopedic doctor. The orthopedic doctor, Dr. Leon R. Hubrick, concluded that the nerve and tissue in Plaintiff's foot was badly damaged, was concerned why Plaintiff was "just now" seeing a[n] orthopedic doctor, and scheduled Plaintiff for another appointment in three to four weeks. Plaintiff was transferred before he made that appointment.
>
> Plaintiff asserts that deliberate indifference by Defendants and the delay in treatment has caused damage to the nerves in his right foot and complete loss of feeling in a portion of his foot and two toes. Plaintiff seeks injunctive relief (to enjoin Hinsley from operating heavy equipment around inmates and to require Hinsley to have his eyes tested) and damages. Plaintiff seeks damages from Hinsley for negligently operating heavy machinery and causing Plaintiff's injuries. Plaintiff seeks damages from Dr. Chetta for medical negligence and for willfully ignoring Dr. Brown's recommendations and cutting his foot

2

open before following up with Dr. Brown.

(Order, Doc. 7 at 4-6 (citations and footnotes omitted)).

Based on these allegations, the Court reached the following conclusions:

Plaintiff's allegations – that Hinsley is blind in his left eye, operated the backhoe although he previously had hit inmates while operating heavy machinery, and injured Plaintiff – appear to show deliberate indifference rather than simple negligence on the part of Hinsley, and his damage claims against Hinsley shall be allowed to proceed.

. . . .

Plaintiff's condition, as alleged, qualifies as a serious medical need. Further, Plaintiff's allegations that Dr. Chetta's treatment consisted of willfully ignoring Dr. Brown's recommendations and cutting Plaintiff's foot open to relieve swelling, is enough, at this stage of the proceeding, to show deliberate indifference to a serious medical need. Accordingly, Plaintiff's claims against Dr. Chetta shall be allowed to proceed.

(Id. at 8, 9).

Defendants Hinsley and Chetta thereafter filed answers to the complaint (Docs. 13 and 14, respectively), and following a period of discovery, filed the pending motions for summary judgment (Docs. 26 and 23, respectively). The Clerk of Court sent notices to Plaintiff directing him to respond to the summary judgment motions. [Docs. 25, 27]. Plaintiff then filed a Motion for Continuance [Doc. 28], requesting that the Court continue proceedings until December 2014, when Plaintiff expects to be released from prison, so that he could obtain counsel (id. at 1). By Order entered November 22, 2010, the Court denied Plaintiff's motion

to continue but, in light of his *pro se* status, allowed Plaintiff "an additional thirty days in which to respond to Defendants' motions for summary judgment." (Doc. 30 at 2). Plaintiff has not filed a response to either summary judgment motion.

## II. **Summary Judgment Standard and Procedures**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) [now Rule 56(a)] mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating that summary judgment is warranted. Apcoa, Inc. v. Fidelity Nat'l Bank, 906 F.2d 610, 611 (11th Cir. 1990). The movant may do so by showing "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325. Once the movant has properly supported the summary judgment motion, the non-movant then must "come forward with specific facts showing that there is a *genuine issue for trial*," i.e., that the evidence is sufficient to support a jury verdict in the non-movant's favor. Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (internal quotations omitted); see also Chanel, Inc. v. Italian Activewear of

4

Fla., Inc., 931 F.2d 1472, 1477 (11th Cir. 1991) (stating that "non-moving party must come forward with *significant, probative evidence*") (emphasis added).

A motion for summary judgment may be supported or opposed with the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[1] "As a general rule, the

---

[1] This Court's Local Rules provide additional requirements.

> A movant for summary judgment shall include with the motion and brief a separate, concise, numbered statement of the material facts to which the movant contends there is no genuine issue to be tried. Each material fact must be numbered separately and supported by a citation to evidence proving such fact. The court will not consider any fact: (a) not supported by a citation to evidence (including page or paragraph number); (b) supported by a citation to a pleading rather than to evidence; (c) stated as an issue or legal conclusion; or (d) set out only in the brief and not in the movant's statement of undisputed facts.

LR 56.1.B.(1), NDGa.

The response to the motion for summary judgment shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts." LR 56.1.B.(2)a.(1), NDGa.

> This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1).

5

court may consider on a Rule 56 summary judgment motion any material that would be admissible or usable at trial." Property Mgmt. & Invs., Inc. v. Lewis, 752 F.2d 599, 604 n.4 (11th Cir. 1985); see also Rowell v. BellSouth Corp., 433 F.3d 794, 800 (11th Cir. 2005) (stating that court "may consider only . . . evidence [that] can be reduced to an admissible form," and noting that "evidence that is otherwise admissible may be accepted in an inadmissible form at summary judgment stage"); Woods v. City of Chicago, 234 F.3d 979, 987-88 (7th Cir. 2000) (stating that former Rule 56(e) "does not *require* that all supporting material be submitted in affidavit form,"[2] and that a "court may consider any material that would be admissible or usable at trial, including properly authenticated and admissible documents or exhibits" (citation and internal quotations omitted)), cert. denied, 534 U.S. 955 (2001). "[C]onclusory assertions . . . [without] supporting evidence are insufficient

---

LR 56.1.B.(2)a.(2), NDGa. Nevertheless, this Court has "broad discretion" to overlook noncompliance with Local Rule 56.1 and to "base its decision on *all* of the evidentiary materials in the record on summary judgment." Reese v. Herbert, 527 F.3d 1253, 1270 (11th Cir. 2008) (citing Tippens v. Celotex Corp., 805 F.2d 949, 952 (11th Cir. 1986), for the proposition that "District Court shall consider all evidence in the record when reviewing a motion for summary judgment . . . and can only grant summary judgment if *everything* in the record . . . demonstrates that no genuine issue of material fact exists").

[2] An affidavit "must be made on personal knowledge [and] set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). An "unsworn declaration, certificate, verification, or statement" may be used in the place of a sworn affidavit to support or oppose a motion for summary judgment if the declaration "is subscribed by [the declarant], as true under penalty of perjury, and dated." See 28 U.S.C. § 1746.

6

to withstand summary judgment." Holifield v. Reno, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotations omitted). However, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion." United States v. One Piece of Real Prop., 363 F.3d 1099, 1101 (11th Cir. 2004), cert. denied, 549 U.S. 1342 (2007). When considering a summary judgment motion, a court must "view the evidence and all factual inferences therefrom in the light most favorable" to the non-movant. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

### III. Discussion

**A.  Hinsley's Motion for Summary Judgment [Doc. 26]**

   **1.  Facts**

In support of his summary judgment motion, Hinsley sets forth the following

7

undisputed material facts (Doc. 26-2, Statement of Undisputed Material Facts): Hinsley has been employed by Jackson County for approximately sixteen years as a heavy equipment operator, and his duties have included supervising Jackson County Correctional Institute ("JCCI") inmate work crews (id. ¶¶ 1-2). On or about August 8, 2008, Plaintiff began to work as a member of a JCCI work crew. (Id. ¶ 3). Hinsley was supervising that crew on September 12, 2008 (id. ¶ 4), and he was operating a backhoe equipped with a "bucket at the end of a boom" (see id. ¶¶ 5, 7). The other end of the boom, near the cab of the backhoe, has "metal plates at the end of rods or 'arms' which are referred to as outriggers." (Id. ¶¶ 5, 7-8; see also Doc. 26, Attach. to Def. Ex. A (photographs of the backhoe); id. at CM/ECF 7-9). "When the backhoe is engaged in the ground, the outriggers come off the ground for a distance of five or six inches." (Doc. 26-2 ¶ 9). When the bucket is disengaged, the outriggers go back to the ground to provide stability to the equipment. (Id. ¶ 10). On September 12, 2008, while Hinsley was attempting to move the backhoe forward a few feet, he disengaged the bucket, the outrigger on the left side went down toward the ground and Plaintiff's foot was injured. (Id. ¶¶ 11-12). "Hinsley was not aware that [Plaintiff's] foot was in a position to be injured" at that moment. (Id. ¶ 13; see also Doc. 26, Hinsley Decl., ¶ 6). Hinsley is not blind in either eye and he does not use corrective lenses other than reading glasses. (Doc. 26-2 ¶ 14; see also Doc. 26, Hinsley Decl., ¶ 14). During Hinsley's

8

sixteen years of employment by Jackson County as the heavy equipment operator supervising inmate work crews, there has never been an incident where an inmate has been injured by his operation of equipment. (Doc. 26-2 ¶ 15; see also Doc. 26, Hinsley Decl. ¶ 15).[3]

In his accompanying declaration, Hinsley states the following: "On the date in question, . . . [Plaintiff] was in the process of bolting [a] flange onto an eighteen inch metal pipe and while doing so, he was apparently stretching his right foot out for leverage." (Doc. 26, Hinsley Decl. ¶ 6). "I was not aware that his foot was in a position to be injured, and the way in which the outriggers go up and down is evident to anyone who has observed backhoe operations for even a brief time." (Id.). "Mr. Johnson at first said he was all right but when I told him to take off his boot, I could observe an obvious injury. It started to swell, ice was applied, and I called my immediate supervisor about the incident, and he came over and picked Mr. Johnson up." (Id. ¶ 7).

Plaintiff has filed no response to Hinsley's statement of undisputed material facts and accompanying declaration. By local rule, then, Plaintiff has admitted

---

[3] Plaintiff alleges in his complaint that Defendant Hinsley "is completely blind in his left eye and has hit other inmates in the pas[t] while operating heavy equipment around inmates in his care." (Doc. 1, Compl., Statement of Claims at 2; id., at CM/ECF 9). Plaintiff has not provided the basis of his "knowledge" in support of these allegations, nor has he produced any evidence that controverts Hinsley's testimony that he is not blind in either eye and has never previously injured an inmate while operating heavy equipment.

9

that Hinsley's material facts are true.  See LR 56.1.B.(2)a.(2), NDGa.

### 2. Analysis

The Eighth Amendment prohibits infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. A viable Eighth Amendment claim for cruel and unusual punishment requires, "objectively speaking, conduct by public officials sufficiently serious to constitute a . . . deprivation . . . [of] the minimal civilized measure of life's necessities. . . . [and] a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000) (citations and internal quotations omitted), cert. denied, 531 U.S. 1077 (2001).

"Prison conditions are subject to 'scrutiny under the Eighth Amendment.'" Ferrell v. Doe 1, No. 1:10-CV-3515-TWT-AJB, 2011 U.S. Dist. LEXIS 35251, at *11 (N.D. Ga. Mar. 31, 2011) (quoting Farmer v. Brennan, 511 U.S. 825, 832 (1994)). "The Eighth Amendment prohibits deliberate indifference to prison conditions that deprive an inmate of essential human needs such as food, clothing, shelter, medical care, and reasonable safety." Ferrell, 2011 U.S. Dist. LEXIS 35251, at *11 (citing Helling v. McKinney, 509 U.S. 25, 31-32 (1993)). "[A] claim of deliberate indifference requires proof of more than gross negligence," Ferrell, 2011 U.S. Dist. LEXIS 35251, at *11 (internal quotation omitted), but rather, "[a] prison official is deliberately indifferent if he or she 'knows of and disregards an excessive risk to inmate health or safety.'" Ferrell, 2011 U.S. Dist. LEXIS 35251, at *11 (quoting

Farmer, 511 U.S. at 837). "The conditions alleged must be extreme, resulting in a denial of 'the minimal civilized measure of life's necessities' and posing an excessive or substantial risk of serious harm.' " Ferrell, 2011 U.S. Dist. LEXIS 35251, at *12 (quoting Farmer, 511 U.S. at 834).

Plaintiff alleges that Hinsley "willfully and totally unnecessarily without paying close attention pull[ed] a back hoe next to Plaintiff while Plaintiff's back was turned and officer Don Hinsley did willfully and unnecessarily let the outrigg[er] of the backhoe down in full force upon Plaintiff['s] right foot." (Doc. 1, Compl., Statement of Claims at 2; id. at CM/ECF 9). As noted, Plaintiff also alleges that Hinsley is blind in his left eye and previously has hit other inmates while operating heavy equipment. (Id.).

There is no evidence in the record, however, to create a genuine issue of material fact on the issue of whether Hinsley was deliberately indifferent to Plaintiff's safety while Hinsley was operating the backhoe on September 12, 2008. Hinsley avers that he suffers from no visual impairment and that no other inmate has been injured in the same manner as Plaintiff during Hinsley's sixteen years supervising JCCI inmate work crews. Plaintiff has offered no evidence to the contrary.

"[C]onclusory assertions . . . , in the absence of supporting evidence, are insufficient to withstand summary judgment." Holifield, 115 F.3d at 1564 n.6. At most, Plaintiff's injury was the result of negligence on Hinsley's part, which is not

11

actionable under § 1983. See Smith v. Reg'l Dir. of Fla. Dep't of Corrs., 368 F. App'x 9, 14 (11th Cir. 2010) (unpublished decision) ("[S]imple negligence is not actionable under § 1983, and a plaintiff must allege 'a conscious or callous indifference to a prisoner's rights.' "(quoting Williams v. Bennett, 689 F.2d 1370, 1380 (11th Cir. 1982))). As there is no evidence in the record that Hinsley was deliberately indifferent to a serious risk of harm to Plaintiff, there is no genuine issue of material fact for trial, and Hinsley is entitled to summary judgment.

    **B.**    **Dr. Chetta's Motion for Summary Judgment [Doc. 23]**

        **1.**    **Facts**

Dr. Chetta supports his motion for summary judgment with his statement of undisputed material facts [Doc. 23-6], which he supports in turn with his own affidavit [Doc. 23-2], in which he avers that he reviewed Plaintiff's medical records from the JCCI, the Banks-Jackson Commerce Medical Center ("BJCMC") and Hawthorne Orthopedics, all filed under seal [Docs. 34-3, 34-4 & 34-5], and that he examined Plaintiff personally on more than one occasion while Plaintiff was housed at the JCCI (Chetta Aff., Doc. 23-2 ¶¶ 6-8). Dr. Chetta sets forth the following undisputed material facts (Doc. 23-6): Dr. Chetta has been the jail physician at the JCCI for about ten years, and he visits the jail, on average, once per week. (Doc. 23-6 ¶ 2). Although Plaintiff suffered a crush injury to his right foot on September 12, 2008, Dr. Chetta did not examine Plaintiff's foot until September 18, 2008. (Id. ¶¶ 4, 20).

12

AO 72A
(Rev.8/82)

On September 12, 2008, Nurse Ronnie Jones at the JCCI gave Plaintiff crutches, ice for swelling, and pain medication upon his return from the work detail. (Id. ¶ 5). Plaintiff was then taken to the BJCMC, where emergency room physician Dr. Kirk Brown examined him. (Id. ¶¶ 6, 7). An X ray of Plaintiff's foot revealed that he might have a non-displaced chip fracture on his big toe, and that he had some soft tissue swelling. (Id. ¶ 8). Dr. Brown gave Plaintiff additional pain medication and had his skin wound dressed and his foot placed in a compression wrap. (Id. ¶ 9). Dr. Brown did not provide Plaintiff with a cast or recommend a surgical consult but instead recommenced that Plaintiff follow the RICE treatment (i.e., **r**est, **i**ce, **c**ompress, and **e**levate the foot). (Id. ¶¶ 10, 11). Dr. Brown prescribed pain medication and recommended a follow up with Plaintiff's primary care physician, namely, Dr. Chetta. (Id. ¶ 12; see also Doc. 23-2, Chetta Aff. ¶ 14). The nurse who wrote the discharge instruction stated that Plaintiff should follow up with an orthopedist. (Doc. 23-2, Chetta Aff. ¶ 11).

Back at JCCI, Nurse Jones monitored Plaintiff's condition on September 13, 15, and 16, 2008, and she noted that he ambulated without difficulty on his crutches and that his reported pain level had reduced from an "8" to a "4." (Doc. 23-6 ¶¶ 14-18). Nurse Jones changed Plaintiff's dressing and noted a blister on the top of his foot that was filling with fluid. (Id. ¶18).

On September 18, 2008, Dr. Chetta reviewed Plaintiff's medical records, drained the blister on his foot, advised him not to put weight on the foot, adopted

13

Dr. Brown's RICE treatment recommendation and ordered a repeat X ray in six weeks. (Id. ¶¶ 20-23). Plaintiff continued to receive pain medication as needed. (Id. ¶ 26).

Dr. Chetta saw Plaintiff again on October 2, 2008; he drained Plaintiff's blister again, and he noted the absence of pus, a sign that there was no infection. (Id. ¶¶ 27-28). Due to the swelling in Plaintiff's foot, Dr. Chetta recommended a visit to an orthopedist; that visit occurred on October 6, 2008 when Dr. Leon Hubrich examined Plaintiff. (Id. ¶¶ 29-30). Dr. Hubrich reviewed the BJCMC X rays and ordered new ones, which revealed the same chip fracture at the base of Plaintiff's big toe, but no other fractures or other bone damage. (Id. ¶¶ 31-32). Dr. Hubrich did not recommend surgery or a cast but instead recommended that Plaintiff continue with the same RICE treatment along with pain medication as needed, which Dr. Chetta had already prescribed. (Id. ¶ 33).

Dr. Chetta examined Plaintiff again on October 29, 2008 and, based on Plaintiff's continuing complaints, recommended that he be transferred to a facility with twenty-four-hour medical care. (Id. ¶ 36). Plaintiff was then transferred to Georgia State Prison, where he continued on the same treatment regimen begun at the JCCI, and where, on November 19, 2008, he was released to active work duty due to the improvement in his foot. (Id. ¶¶ 38-41).

Dr. Chetta is of the opinion that when a patient has a crush injury, a cast cannot be applied because it will only inhibit the healing process of the soft tissue

14

and that the best course of action for Plaintiff was to follow the RICE treatment prescribed by Dr. Brown, which Dr. Chetta prescribed for Plaintiff. (Id. ¶¶ 24-25). Dr. Chetta testified that "[a]lthough there is no medical evidence I have seen that Plaintiff has experienced any nerve damage to his foot, if he indeed has, said damage would be caused by his foot being crushed, not by any supposed delay in seeing an orthopedist." (Doc. 23-2, Chetta Aff. ¶ 25).

Plaintiff has filed no response to Dr. Chetta's statement of undisputed material facts and accompanying affidavit. By local rule, then, Plaintiff has admitted that Dr. Chetta's material facts are true. See LR 56.1.B.(2)a.(2), NDGa.

### 2. Analysis

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v. Georgia*, [428 U.S. 153, 173 (1976)] (joint opinion), proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976). To demonstrate deliberate indifference, a plaintiff must show both "an objectively serious medical need" and the defendant's subjective knowledge of, and more than negligent disregard of, that need. Farrow v. West, 320 F.3d 1235, 1243, 1245 (11th Cir. 2003). "A core principle of Eighth Amendment jurisprudence in the area of medical care is that prison officials with knowledge of the need for care may not, by failing to provide care, delaying care, or providing grossly inadequate care, cause a prisoner to needlessly suffer the pain resulting from his or her illness." McElligott v. Foley, 182 F.3d 1248, 1257 (11th

15

Cir. 1999); see also Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187, 1187-88 (11th Cir. 1994) (stating that "[d]elay in access to medical attention can violate the Eighth Amendment when it is tantamount to unnecessary and wanton infliction of pain," but that "[a]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed" (citation and internal quotation omitted)), overruled in part on other grounds, Hope v. Pelzer, 536 U.S. 730 (2002); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir.) (stating that "a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim"), cert. denied, 496 U.S. 928 (1990).

Negligence, however, even rising to the level of medical malpractice, does not constitute deliberate indifference. McElligott, 182 F.3d at 1254; see also Hinson v. Edmond, 192 F.3d 1342, 1345 (11th Cir. 1999) ("That medical malpractice - - negligence by a physician - - is insufficient to form the basis of a claim for deliberate indifference is well settled."), amended by 205 F.3d 1264 (11th Cir. 2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (noting that "[m]ere negligence in diagnosing or treating a medical condition is an insufficient basis" for a deliberate indifference claim). Nor does a simple disagreement over a diagnosis or course of treatment constitute deliberate indifference. As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different

16

treatment does not give rise to a constitutional claim.  See Harris v. Thigpen, 941 F.2d 1495, 1504-05 (11th Cir. 1991); see also Adams, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983").

Based on the undisputed record evidence in this case, there is no *genuine* issue of material fact regarding Dr. Chetta's alleged deliberate indifference to Plaintiff's medical condition.  The "Emergency Room/Outpatient Record" page of the BJCM records [Doc. 34-4, under seal] reflects that Dr. Brown recommended that Plaintiff "F/U LNP [follow up with licensed nurse practitioner] on 9/15/08" and the "ED Discharge Instructions" page of those records reflects that the nurse wrote that Plaintiff should "follow up with an orthopedic doctor in 2-3 days."  The records of JCCI [Doc. 34-3, under seal] reflect that Plaintiff was in fact seen by Nurse Jones at JCCI on September 13th, 15th and 16th; that on September 13th, his pain level had decreased from an 8 to a 4; that on the 15th Nurse Jones changed the dressing on Plaintiff's foot and applied a wrap and Plaintiff was in no acute distress; and that on the 16th the dressing on Plaintiff's foot was changed and reinforced and he "denie[d] any acute distress" and was "ambulating [without] diff[iculty]."

Those records also reflect that Dr. Chetta examined and treated Plaintiff on September 18th and October 2nd as he testified.  The records of Hawthorne

17

Orthopedics [Doc. 34-5, under seal] reflect that on October 6, 2008, Plaintiff visited an orthopedic specialist, Dr. Hubrich, who offered a diagnosis and treatment regimen similar to Dr. Brown's. Those records also reflect that Dr. Hubrich diagnosed Plaintiff with a "[c]rush injury with hematoma formation, right foot," and a chip fracture of the right big toe, as did Dr. Brown, and he added a third diagnosis: "[n]europraxia of the right foot secondary to crush injury." Neurapraxia is "[t]he mildest type of focal nerve lesion that produces clinical deficits; localized loss of conduction along a nerve without axon degeneration; caused by a focal lesion, usually demyelinating, and followed by a complete recovery." Stedman's Medical Dictionary 1206 (Maureen Barlow Pugh et al. eds., 27th ed. 2000).

Dr. Hubrich also made the following treatment recommendation:

> I have recommended that the patient continue with Darvocet-N 100 to decrease the irritation, and we placed him on Clinoril[4] 200 mg b.i.d. pc with contrast bathing to the area. He should continue with his antibiotics until they are finished. He will be continued with heel walking with crutches for the next 4 weeks. We discussed the possibility that he will have difficulties with pain and irritability because of the crush injury and soft tissue damage more than from the fracture. He will probably have difficulties for another 2 months or so.

[Doc. 34-5, under seal]. And, in fact, by November 19, 2008, six weeks after

---

[4] Clinoril is the brand name for Sulindac, which "is used to relieve pain, tenderness, swelling, and stiffness caused by" inflammation, among other things. "Sulindac is in a class of medications called NSAIDs. It works by stopping the body's production of a substance that causes pain, fever, and inflammation." Sulindac, PubMed Health, www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000529 (last updated Sept. 1, 2008).

Plaintiff's visit to Dr. Hubrich, his foot had recovered to such an extent that he was released to return to active work duty, with "[n]o medical limitations or hold." [Doc. 34–3, under seal].

There is no evidence in the record that Plaintiff experienced any increase in pain as a result of a delay in treatment of his right foot following his injury from the backhoe or that he suffered permanent damage to his foot as a result of his treatment at the JCCI or the three-week delay in his visit to an orthopedic specialist. The evidence of record indicates that the orthopedist Plaintiff visited made recommendations consistent with the treatment he was receiving at the JCCI and that Plaintiff made a full recovery from his foot injury. Plaintiff has offered no evidence to the contrary. See Chanel, Inc., 931 F.2d at 1477 (stating that to avoid summary judgment in favor of movant, "the non-moving party must come forward with significant, probative evidence demonstrating the existence of a triable issue of fact").

In short, there is no genuine issue of material fact for trial with respect to Plaintiff's claim of deliberate indifference to his serious medical need, and Dr. Chetta, like Hinsley, is entitled to summary judgment in this matter.

### IV. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant Chetta's Motion for Summary Judgment [Doc. 23] and Defendant Hinsley's Motion for Summary Judgment [Doc. 26] be **GRANTED**, and that this action be **DISMISSED**.

The Clerk is **DIRECTED** to withdraw the reference to the Magistrate Judge.

**IT IS SO DIRECTED and RECOMMENDED**, this 30th day of August, 2011.

*Susan S. Cole*
SUSAN S. COLE
United States Magistrate Judge

AO 72A
(Rev.8/82)